CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: Gabriela_Rivera@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
CARLITOS RICARDO PARIAS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLITOS RICARDO PARIAS,<br><br>Defendant. | Case No. 2:25-cr-00904-FMO<br><br>**DECLARATION OF DEFENSE COUNSEL** |

Defendant Carlitos Ricardo Parias, by and through his attorneys of record, Federal Public Defender Cuauhtemoc Ortega and Deputy Federal Public Defender Gabriela Rivera, hereby files this declaration of defense counsel regarding Mr. Parias's ongoing detention by the federal government.

                                         Respectfully submitted,

DATED: November 26, 2025    By: */s/ Gabriela Rivera*
                                            CUAUHTEMOC ORTEGA
                                            Federal Public Defender
                                            GABRIELA RIVERA
                                            Deputy Federal Public Defender
                                            Attorneys for CARLITOS RICARDO PARIAS

**DECLARATION OF GABRIELA RIVERA**

1. I am the Deputy Federal Public Defender assigned to represent Carlitos Ricardo Parias. I have been appointed to represent him since his initial appearance on October 27, 2025.

2. This declaration is intended to provide the Court with additional information about Mr. Parias's ongoing detention and the defense team's efforts to effectively represent him. It also addresses concerns the defense team has had regarding whether Mr. Parias's release on bond will result in his being detained for any amount of time at the Adelanto Detention Facility.

3. Since his initial appearance, Mr. Parias's defense team has been gravely concerned about his health and access to medical care. On October 21, 2025, a group of masked and unidentifiable officers descended on Mr. Parias as he was in his car and preparing to go to work for the day. The officers trained their weapons on Mr. Parias and at least one officer fired shots directly at him, striking and wounding him. As a result, Mr. Parias underwent surgery and was hospitalized for almost a week before being transferred to MDC on October 26.

4. When I first met with Mr. Parias on October 27, I observed him in an extraordinary amount of pain that affected his ability to focus on anything else, including the criminal case in which he was making his initial appearance. I learned that, since arriving at MDC on October 26, Mr. Parias had been given only Ibuprofen to treat the pain he was experiencing as a result of the gunshot wound and related surgery. By contrast, he had been relying on morphine at the hospital where he was treated prior to being transferred to MDC. I requested that the court order that MDC conduct a full medical evaluation and that Mr. Parias be provided with adequate pain management medication. (Dkt. 37-1 at 9-11 of 14.) Ultimately, the court recommended "that he be seen forthwith by the institution and evaluated for his need for the previously given pain medication for his condition." (*Id*. at 11 of 14.)

1

5. I represented Mr. Parias at his continued detention hearing on October 31, where Magistrate Chooljian granted Mr. Parias's pretrial release subject to conditions. Again, Mr. Parias appeared to be in a significant amount of pain as a result of the gunshot injury. My recollection is that I again raised the issue of adequate medical treatment with the court and on the record.

6. My colleague, DFPD Claire Kennedy, specially appeared on my behalf for Mr. Parias's arraignment on November 17, as I was responsible for handling other court appearances that day. DFPD Kennedy observed that Mr. Parias was visibly in pain and requested that the court order that MDC conduct a medical evaluation of Mr. Parias.

7. Over the last several weeks, I and other members of the defense team have met with Mr. Parias at MDC. We have remained concerned about his health and the medical care that he is receiving. In order to monitor his medical condition and also to effectively prepare his defense, I and other members of the defense team have coordinated our schedules to plan regular in-person legal visits with Mr. Parias. For example, I had been planning to conduct a legal visit with Mr. Parias and two other members of the team the morning of Monday, December 1, 2025.

8. Recently, I emailed MDC legal counsel to raise concerns about his continuing medical urgency. Among other things, I wrote "We are gravely concerned that he is in an enormous amount of pain nearly constantly but receives inadequate and infrequent pain medication. We are also very concerned about whether he is receiving adequate medical attention to ensure that his wound and arm heal properly."

9. Since November 24, the defense team has made efforts independent of the government to identify where Mr. Parias is detained. On November 24, we learned that, although the BOP Inmate Locator suggested Mr. Parias remained at MDC, he was in fact in the custody of DHS. My understanding is that he was detained for a period of time that day and perhaps overnight in the basement of the federal building located at 300 N. Los Angeles St. The short-term DHS detention center in the basement is known

as "B-18," and civil rights advocates have long raised concerns that the conditions there are inhumane.

10. On November 25, the defense team confirmed that Mr. Parias had been moved and was being detained at the Adelanto Detention Facility in the high desert of San Bernardino County. We immediately began making efforts to schedule a legal visit with Mr. Parias. Because the detention center is almost a 2-hour drive from Downtown Los Angeles, we have not been able to conduct an in-person visit with him and may not be able to do so before the next hearing. We began the process of arranging for a legal visit by video teleconference but were unable to complete the request because we did not have Mr. Parias's "A-Number" (the immigration file number assigned by DHS). This morning, I emailed government counsel requesting Mr. Parias's A-Number, and government counsel responded and provided it to me.

11. Related to the prior point, we did not have Mr. Parias's A-Number because the government has not produced any discovery in this case. I first requested discovery in this case on October 28, the day after Mr. Parias's initial appearance and in advance of the continued detention hearing set for October 31. I followed up on that request on November 3, November 6, and November 21. I understand that the government intends to make an initial production of some discovery today, November 26. As of the time of this filing, we have not yet received any discovery.

12. Since Mr. Parias's initial appearance, I have had grave concerns about whether Mr. Parias's release on bond will result in his being detained for any amount of time at the Adelanto Detention Facility, both because it would interfere with my ability to adequately represent him and because I understand that the conditions at Adelanto are not suitable for someone in Mr. Parias's condition.

13. I have visited Adelanto several times in connection with my representation of individuals subject to prolonged detention. As a result, I know from experience that the facility is an approximately two-hour drive away from my office in Downtown Los Angeles. This is in stark contrast to the ten-minute walk between my office and MDC.

3

Furthermore, I am aware from my own experience, from that of my colleagues, and from concerns raised by advocates that legal representation of persons detained at Adelanto can incredibly difficult, as there are numerous barriers to having the privileged conversations that would be necessary in order to adequately prepare Mr. Parias's defense.

14. I have also represented persons detained at Adelanto who suffer from serious medical conditions. I am aware from my own experience, from that of my colleagues, and from concerns raised by advocates that persons detained at Adelanto are regularly denied medical care and/or provided substandard medical care. For example, in September and October of this year, two men who had resided in the United States for decades died within weeks of being detained at Adelanto.[1]

15. I have carefully reviewed the Court's November 21, 2025 order. I understand that the Court will consider an *ex parte* application to dismiss the Indictment should Mr. Parias be held in immigration detention rather than released during the pendency of the criminal case. As referenced above, the defense team has not been able to consult with Mr. Parias since receiving the Court's order. We are at this time conducting legal research, gathering additional information, making efforts to consult with Mr. Parias, and determining how to proceed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed November 26, 2025 at Los Angeles, California.

                                                */s/ Gabriela Rivera*
                                                GABRIELA RIVERA

---

[1] Meg James, "Deaths in ICE Custody Raise Serious Questions, Lawmakers Say," L.A. TIMES, (Nov. 22, 2025, 1:58 p.m.) https://www.latimes.com/california/story/2025-11-22/ice-custody-deaths-raise-congress-member-questions-ismael-ayala-uribe

4