1    TODD BLANCHE
     Deputy Attorney General
2    BILAL A. ESSAYLI
     First Assistant United States Attorney
3    ALEXANDER B. SCHWAB
     Assistant United States Attorney
4    Acting Chief, Criminal Division
     CHRISTOPHER JONES (Cal. Bar No. 343374)
5    Assistant United States Attorney
     General Crimes Section
6         1200 United States Courthouse
          312 North Spring Street
7         Los Angeles, California 90012
          Telephone: (213) 894-7383
8         Facsimile: (213) 894-0141
          E-mail:    christopher.jones4@usdoj.gov
9
     Attorneys for Plaintiff
10   UNITED STATES OF AMERICA

11                    UNITED STATES DISTRICT COURT

12                FOR THE CENTRAL DISTRICT OF CALIFORNIA

13   UNITED STATES OF AMERICA,          No. 2:25-cr-00904-FMO

14             Plaintiff,               GOVERNMENT'S OPPOSITION TO
                                        DEFENDANT'S EX PARTE APPLICATION
15             v.                       FOR ORDER DISMISSING CASE WITH
                                        PREJUDICE; DECLARATION OF JOLENE
16   CARLITOS RICARDO PARIAS,           VELASQUEZ

17             Defendant.               Location:    Courtroom of the
                                                     Hon. Fernando M.
18                                                   Olguin

19

20        Plaintiff United States of America, by and through its counsel

21   of record, the First Assistant United States Attorney for the Central

22   District of California and Assistant United States Attorney

23   Christopher Jones, hereby files its Opposition to Defendant's Ex

24   Parte Application for Order Dismissing Case with Prejudice.

25   //

26

27

28

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 12, 2025          Respectfully submitted,

                                   TODD BLANCHE
                                   Deputy Attorney General

                                   BILAL A. ESSAYLI
                                   First Assistant United States
                                   Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division


                                   _____/s/_____
                                   CHRISTOPHER JONES
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      Defendant Carlitos Ricardo Parias is detained by the United
4  States Immigration and Customs Enforcement ("ICE") in immigration
5  custody pursuant to the express terms of the Immigration and
6  Nationality Act ("INA"), 8 U.S.C. § 1101, <u>et seq.</u>  Defendant asks the
7  Court to ignore the INA because the Court previously found that
8  defendant should be released on bond pursuant to the Bail Reform Act,
9  a wholly separate statute, and dismiss the Indictment.

10     Defendant's motion fails as a matter of law because, as
11  explained by the Ninth Circuit, "detention of a criminal defendant
12  pending trial pursuant to the Bail Reform Act and detention of a
13  removable alien pursuant to the Immigration and Nationality Act are
14  separate functions that serve separate purposes and are performed by
15  different authorities." <u>United States v. Diaz-Hernandez</u>, 943 F.3d
16  1196, 1199 (9th Cir. 2019) (cleaned up).  Accordingly, although
17  defendant relies on a non-binding district court decision that
18  predates <u>Diaz-Hernandez</u>, "[n]o court of appeals . . . has concluded
19  that pretrial release precludes pre-removal detention." <u>United</u>
20  <u>States v. Soriano Nunez</u>, 928 F.3d 240, 245 (3d Cir. 2019) (collecting
21  cases).  This Court should deny defendant's legally baseless request
22  for dismissal.

23     Defendant's motion is also factually premature.  Difficulties
24  scheduling legal visits with a defendant (whether in immigration
25  custody or pretrial criminal detention) are insufficient to establish
26  a claim of inadequate access to counsel warranting dismissal when
27  other remedies, such as a continuance, are available. See <u>United</u>
28  <u>States v. Lewis</u>, 873 F.2d 1279, 1280 (9th Cir. 1989).

1  **II.   STATEMENT OF FACTS**

2      **A.   Defendant's Immigration History**

3      On or about June 13, 2025, defendant was in a car that was

4  tailing a law enforcement vehicle transporting a targeted gang

5  member.  (See, e.g., Government's Application for Review, Dkt. 12-1

6  at 2.)  Law enforcement stopped the car and found defendant hiding in

7  the backseat.  (Id.)  Law enforcement removed defendant from the

8  vehicle and placed him in handcuffs on the sidewalk. (Id.)  As a

9  crowd gathered at the scene, a gray car pulled up and a person

10 unaffiliated with law enforcement escorted defendant from the

11 sidewalk into the gray car that carried defendant away from the scene

12 without law enforcement's permission. (Id.)

13     Law enforcement subsequently determined the identity of

14 defendant through a review of social media.  On or about October 19

15 and 20, 2025, law enforcement sought and obtained an I-200

16 administrative warrant for defendant's arrest because defendant is a

17 citizen and national of Mexico who does not have lawful status in the

18 United States and therefore is subject to removal.

19     **B.   Defendant's Criminal Charges**

20     On or about October 21, 2025, law enforcement sought to arrest

21 defendant on the administrative warrant. (Dkt. 12-1 at 3-4.)  As

22 defendant was driving down a street near a residence where he was

23 believed to be living or staying, a law enforcement vehicle (a Dodge

24 Durango) pulled in front of him with its emergency lights activated.

25 (Id.)  Two additional law enforcement vehicles surrounded defendant's

26 car, preventing him from traveling further. (Id.)  In response,

27 defendant accelerated his car aggressively, causing his car to

28 fishtail and smoke to billow from his tires. (Id.)  This caused

1  agents to fear defendant would hit them with his car.  (Id.)
2  Defendant's car also struck the Dodge Durango.  (Id.)  For his
3  conduct, defendant was charged by criminal complaint with assault on
4  a federal officer in violation of 18 U.S.C. § 111.  (Dkt. 1.)

5      Defendant was subsequently indicted on charges of assault on
6  federal officer using a deadly or dangerous weapon, in violation of
7  18 U.S.C. § 111(a)(1), (b); and depredation of government property,
8  in violation of 18 U.S.C. § 1361.  (Dkt. 24.)

9      **C.   Defendant's Criminal and Immigration Detention Proceedings**
10     On October 22, 2025, the Department of Homeland Security issued
11 an immigration detainer for defendant.

12     On October 27, 2025, defendant appeared for an initial
13 appearance on the criminal complaint before the duty magistrate
14 judge.  At the initial appearance, the government moved for pre-trial
15 detention.  (Dkt. 3.)  Defendant requested a continuance until
16 October 31, 2025, for the detention hearing, which was granted.
17 (Dkt. 10.)  On October 31, 2025, the Honorable Jacqueline Chooljian,
18 United States Magistrate Judge, ordered the defendant be released on
19 a bond under the following conditions, among others: (1) the posting
20 of a $5,000 cash payment by defendant; (2) the filing of two
21 unsecured affidavits of sureties, each for $5,000.  (Dkt. 13.)  That
22 same day, the government filed an application for review of the bond
23 determination.  (Dkt. 12.)

24     On November 21, 2025, this Court ordered defendant released from
25 federal criminal custody forthwith and required the government to
26 provide timely updates on defendant's custodial status, which the
27 government did through filings on the criminal docket.  (Dkt. 29; see
28 also Dkts. 30, 34, 43.)  On November 24, 2025, the next business day,

defendant was released from federal criminal custody and taken into the custody of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, at the federal building located at 300 N. Los Angeles Street, Los Angeles, CA 90012. (Dkts. 30, 34.)  On November 25, 2025, counsel for the government learned that defendant had subsequently been transferred the prior evening to the Adelanto ICE Processing Center and informed defense counsel of defendant's transfer.  (See also Dkt. 43.)

Defendant is administratively detained under 8 U.S.C. § 1226(c)(1)(E), which, as relevant here, provides that the Attorney General "shall" take into custody any alien who (i) "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title," and (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements" of various offenses including "assault of a law enforcement officer."

On December 4, 2025, the Court held a hearing and gave defendant a deadline of December 8, 2025, to post the $5,000 cash deposit required as part of the bond ordered by Judge Chooljian. (Dkt. 49.) That deposit was posted on December 8, 2025. (Dkt. 50.)

On December 9, 2025, the Court held a hearing on the government's application for review, which it denied. (Dkt. 52.) Defendant remains detained in immigration custody at Adelanto.  Since being transferred to Adelanto, law enforcement has coordinated defendant's transportation to attend the December 4 and 9, 2025 hearings, which defendant does not contest.  (Dkt. 54 at 7.)

### D.    Adelanto's Attorney Visitation Policy

Defendant remains detained in immigration custody at Adelanto.

4

Adelanto is approximately 85 miles from the Los Angeles office of the Federal Public Defender in the Central District of California.

Criminal defense attorneys are permitted to see their clients at Adelanto by appointment or walk-in. (<u>See</u> Declaration of Jolene Velasquez ("Velasquez Decl.") at ¶¶ 5-7.) Appointments are available seven days a week and can be made up to two weeks in advance. (<u>Id.</u> at ¶ 5, Ex. 1.) Walk-ins are allowed with a valid bar card. (<u>Id</u>. at ¶ 7.) Attorneys can also contact their clients through video appointments. (<u>Id</u>. at ¶ 10.) In this case, ICE has waived the one-hour visitation time limit that often applies. (<u>Id</u>. at ¶ 6.)

## III. LEGAL STANDARD

Congress enacted the Bail Reform Act, 18 U.S.C. § 3142, <u>et seq.</u>, to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released...." <u>United States v. Salerno</u>, 481 U.S. 739, 741 (1987). After a hearing, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

A separate statute, the INA, 8 U.S.C. § 1101, <u>et seq.</u>, charges the United States Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized to detain, or in some cases required to detain, individuals who are subject to removal. Specifically, as relevant here, 8 U.S.C. § 1226(c)(1)(E) requires mandatory detention where a person is (i) inadmissible under 8 U.S.C. § 1182(6)(A), 6(C), or 7, and (ii) "is charged with, is arrested for, is convicted of,

5

admits having committed, or admits committing acts which constitute
the essential elements" of various offenses including "assault of a
law enforcement officer."

## IV.  ARGUMENT

### A.  The Immigration and Nationality Act is Independent of the Bail Reform Act

ICE's authority to detain defendant pursuant to the INA is
separate and apart from the Court's authority to detain or release
defendant under the Bail Reform Act.  See Diaz-Hernandez, 943 F.3d at
1199 (9th Cir. 2019).  Defendant's argument to the contrary, premised
on a district case from Oregon, fails.  United States v. Trujillo-
Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012).  Trujillo-Alvarez is not
binding precedent on this Court, ignores the independent detention
authority prescribed by the INA, and was issued before the Ninth
Circuit's decision in Diaz-Hernandez.

Consistent with the Ninth Circuit's explanation in Diaz-
Hernandez that detention under the Bail Reform Act and detention
under the INA are "separate functions that serve separate purposes
and are performed by different authorities," six other circuits have
rejected defendant's claim that the government cannot pursue a
criminal prosecution while an alien is detained by immigration
authorities.  See Soriano Nunez, 928 F.3d at 245 (3d Cir. 2019)
(holding that pre-trial release under the Bail Reform Act does not
preclude pre-removal detention under the INA and that "[n]o court of
appeals that has examined this assertion has concluded that pretrial
release precludes pre-removal detention"); United States v. Lett, 944
F.3d 467, 471 (2d Cir. 2019) ("the [Bail Reform Act] and the INA
authorize the government to pursue both criminal prosecution and

1    removal simultaneously, and there is no conflict between the

2    detention-and-release provisions of the two statutes."); United

3    States v. Baltazar-Sebastian, 990 F.3d 939, 944-45 (5th Cir. 2021)

4    (same); United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir.

5    2018) ("ICE may fulfill its statutory duties under the INA to detain

6    an illegal alien pending trial or sentencing regardless of a [Bail

7    Reform Act] release determination."); United States v. Pacheco-Poo,

8    952 F.3d 950, 953 (8th Cir. 2020) (same); United States v. Vasquez-

9    Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019) (same).

10        Taking Lett, for example: the defendant was a citizen of

11   Trinidad and Tobago and was arrested at John F. Kennedy International

12   Airport after CBP found 2.12 kilograms of cocaine in his suitcase.

13   944 F.3d at 469. "CBP paroled Lett into the United States for

14   criminal prosecution and transferred him to the custody of the Bureau

15   of Prisons ('BOP'), and the government filed a criminal complaint

16   charging Lett with importing cocaine...." Id. Meanwhile, ICE lodged

17   an immigration detainer against him. Id. Ultimately, the district

18   court ordered Lett's release pending his criminal case. Id. Then

19   ICE acted on the lodged detainer and took the defendant into ICE

20   custody following his release from BOP, and initiated removal

21   proceedings. Id. "Lett filed a motion to dismiss the indictment in

22   his criminal case, arguing that his continued detention by ICE

23   violated the [Bail Reform Act]." Id. The district court dismissed

24   the indictment, holding that the government needed to decide whether

25   to criminally prosecute or remove Lett but could not proceed

26   simultaneously. Id. at 469-470. The Second Circuit vacated this

27   decision, finding that the Bail Reform Act and the INA "serve

28   different purposes, govern separate adjudicatory proceedings, and

7

1  provide independent statutory bases for detention," and therefore

2  "the government's authority to detain an alien pursuant to the INA"

3  does not disappear merely because he cannot be detained under the

4  Bail Reform Act pending his criminal trial.  Id. at 470.

5      Here, ICE acted on their immigration detainer, which was lodged

6  prior to defendant's grant of bond, and took defendant into ICE

7  custody pursuant to its detention authority under the INA.  Contrary

8  to defendant's position, the government is not required to choose

9  what proceedings to pursue and may pursue both removal and criminal

10 proceedings simultaneously as authorized by statute.  For this

11 reason, the Court should deny defendant's emergency request for

12 defendant's release from immigration custody.

13      **B.   Defendant Has Reasonable Access to Counsel**

14      The Court should also deny defendant's request for dismissal of

15 the Indictment on grounds of inadequate access to counsel.

16 Adelanto's attorney visitation policy is not so overly restrictive as

17 to constructively deny defendant's access to counsel.  Defendant and

18 his counsel are entitled only to "reasonable" access not "the most

19 convenient" access.  Neither the additional distance defense counsel

20 must travel to see defendant at Adelanto nor Adelanto's pre-planning

21 requirements to schedule appointments are per se unreasonable.  In

22 fact, courts have rejected defendant's argument that the length of

23 travel constitutes deprivation of counsel, including the Ninth

24 Circuit.  See United States v. Lewis, 873 F.2d 1279, 1280 (9th Cir.

25 1989) (finding that defendant was not denied access to counsel

26 because the 120-mile distance between him and his counsel did not

27 actually or constructively deny him the assistance of counsel

28 altogether); Ekene v. Cash, 2012 WL 4711723, at *12 (C.D. Cal. May

8

14, 2012)(citing <u>Lewis</u>, 873 F.2d 1279); <u>Pino v. Dalsheim</u>, 558 F. Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts have noted that "travel inconvenience of an attorney ... does not reach the level of a constitutional violation").

Here, defendant is not precluded from seeing defense counsel and may do so either in person or virtually, seven days a week.  In-person visits can be by appointment or by walk-in.  Appointments can be made up to two weeks in advance.  Additionally, the one-hour time limit has been waived in this case.  (Velasquez Decl. ¶ 6.)  Thus, defendant has reasonable access to counsel.  While defendant argues that personnel at Adelanto have not responded to one request for an appointment (Dkt. 54, Ortega Decl., ¶ 6), that single data point alone is insufficient to dismiss a parallel criminal proceeding in its entirety at this stage of the case.

### C.  Dismissal Is Inappropriate Without a Showing of Continuing Prejudice

In <u>United States v. Morrison</u>, the Court ruled that the remedy for a violation of a defendant's Sixth Amendment right to counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  449 U.S. 361, 364 (1981); <u>see also</u> <u>United States v. Zarate</u>, 2019 WL 6493927 (D. Nev. Dec. 2, 2019).  While the Court in <u>Morrison</u> did leave the door open for potential dismissal on a record that reflects continuing prejudice, <u>see</u> <u>Morrison</u>, 449 U.S. at 367, fn. 2, defendant here has not shown sufficient continuing prejudice to justify dismissal.

The procedural history in <u>Zarate</u> out of the District of Nevada is similar to the facts in this case.  There, ICE detained defendant

pending removal proceedings following release under the Bail Reform Act. See Zarate, 2019 WL 6493927 at *1. In Zarate, defendant was actually prevented from seeing her defense counsel for a short period while in ICE custody. Defendant in Zarate raised virtually the same arguments that defendant is making in this case, but the court relying on Morrison, held that defendant "does not even approach 'demonstrable prejudice' from the short period that her counsel were unable to meet with her." Id. at *4. The Zarate court held that even if defendant's ICE custody rose to the level of deprivation of counsel -- the court found that it did not -- the remedy would not be dismissal of the indictment. Id.

To the extent defendant is concerned that his detention pending removal proceedings will infringe on his constitutional rights, the government has already coordinated with ERO to ensure defendant's transportation from ICE custody to criminal proceedings in this matter and will continue to do so. Cf. United States v. Santos-Flores, 794 F.3d 1088, 1090 (9th Cir. 2015) (holding that a district court may "craft an appropriate remedy" if immigration detention "jeopardizes the district court's ability to try him"). As a result, a request to dismiss the criminal case at this time is premature. See, e.g., United States v. Yostin Sleiker, et al., 5:25-mj-00140-KK, Criminal Minutes, Dkt. 26 (C.D. Cal. Apr. 8, 2025) (deferring ruling on an emergency motion for release from immigration custody after being released on bond under the Bail Reform Act).

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's emergency request for dismissal of the Indictment.