TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
CHRISTOPHER JONES (Cal. Bar. No. 343374)
BARR BENYAMIN (Cal. Bar No. 318996)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6482 / (213) 894-6772
     Facsimile: (213) 894-0141
     Email:    christopher.jones4@usdoj.gov
               barr.benyamin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-CR-00904-FMO |
|---|---|
| Plaintiff, | GOVERNMENT TRIAL MEMORANDUM |
| v. | Trial Date: December 30, 2025 |
| CARLITOS RICARDO PARIAS, | Trial Time: 8:45 a.m. |
| Defendant. | Location:  Courtroom of the Hon. Fernando M. Olguin |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Christopher Jones and Barr Benyamin, hereby files its Trial Memorandum.

//

//

1   The government respectfully requests leave to supplement this Trial

2   Memorandum as necessary.

3

4                                Respectfully submitted,

5                                TODD BLANCHE

6                                Deputy Attorney General

7                                BILAL A. ESSAYLI

                                 First Assistant United States

8                                Attorney

9                                ALEXANDER B. SCHWAB

                                 Assistant United States Attorney

10                                Acting Chief, Criminal Division

11                                */s/*

12                                CHRISTOPHER JONES

                                 BARR BENYAMIN

13                                Assistant United States Attorneys

14                                Attorneys for Plaintiff

15                                UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.   FACTUAL SUMMARY...................................................1

     A.   October 2025 Offense Conduct.................................1

     B.   June 2025 Prior Flight from Law Enforcement..................3

II.  Trial and Stipulations...........................................4

III. THE CHARGED OFFENSES.............................................4

     A.   Count One – Assault on Federal Office With a Deadly
          Weapon (18 U.S.C. § 111(a)(1), (b))..........................5

          1.   Elements...............................................5

          2.   Mens Rea for Section 111 Offense.......................6

          3.   Penalties..............................................6

     B.   Count Two – Depredation of Federal Property In Excess
          of $1,000 (18 U.S.C. § 1361)................................7

          1.   Elements...............................................7

          2.   Mens Rea for Section 1361 Offense......................7

          3.   Penalties..............................................8

IV.  LENGTH OF TRIAL AND NUMBER OF WITNESSES..........................8

     A.   Length of Government's Case-In-Chief........................8

     B.   Anticipated Government Witnesses............................8

     C.   Anticipated Government Exhibits.............................9

V.   LEGAL AND EVIDENTIARY ISSUES.....................................9

     A.   Photographs and Video Surveillance..........................9

     B.   Defendant's Statements.....................................10

     C.   Scope of Cross-Examination of Defendant....................11

     D.   Affirmative Defenses and Reciprocal Discovery..............12

     E.   Character Evidence.........................................14

     F.   Defendant's Prior Acts.....................................15

     G.   Discovery Produced After Discovery Deadline................16

H.    Jury Nullification......................................17

VI.  PRETRIAL MOTIONS AND ISSUES TO RESOLVE BEFORE TRIAL...........18

A.    Government Motions.....................................18

B.    Defense Motions........................................18

C.    Issues to Resolve Before Trial.........................19

1.    Impeachment Information............................19

2.    Stipulations to Admissibility of Exhibits..........20

VII. CONCLUSION...............................................20

**Table of Authorities**

<u>**Cases**</u>

<u>McGautha v. California</u>,
  402 U.S. 183 (1971) <u>vacated in part on other grounds</u>, 408 U.S. 941
  (1972) ................................................ 11

<u>Michelson v. United States</u>,
  335 U.S. 469 (1948) ....................................... 14

<u>No. 2:10-CR-0007 JAM KJN</u>,
  2015 WL 871949 (E.D. Cal. Feb. 27, 2015) ................... 17

<u>People of Territory of Guam v. Ojeda</u>,
  758 F.2d 403 (9th Cir. 1985) ............................... 9

<u>Taylor v. Illinois</u>,
  484 U.S. 400 (1988) .................................... 13-14

<u>United States v. Alexander</u>,
  48 F.3d 1477 (9th Cir. 1995) .............................. 12

<u>United States v. Anchrum</u>,
  590 F.3d 795 (9th Cir. 2009) ............................... 6

<u>United States v. Black</u>,
  767 F.2d 1334 (9th Cir. 1985) .......................... 11-12

<u>United States v. Branch</u>,
  91 F.3d 699 (5th Cir. 1996) ............................... 11

<u>United States v. Burreson</u>,
  643 F.2d 1344 (9th Cir. 1981) ............................. 10

<u>United States v. Castro-Cabrera</u>,
  534 F. Supp. 2d 1156 (C.D. Cal. 2008) ..................... 17

<u>United States v. Cherer</u>,
  513 F.3d 1150 (9th Cir. 2008) ............................. 16

<u>United States v. Collicott</u>,
  92 F.3d 973 (9th Cir. 1996) ............................... 11

<u>United States v. Cunningham</u>,
  194 F.3d 1186 (11th Cir. 1999) ............................ 10

<u>United States v. Derington</u>,
  229 F.3d 1243 (9th Cir. 2000) .............................. 8

<u>United States v. Feola</u>,
  420 U.S. 671 (1985) ....................................... 6

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) (per curiam) ..................... 10

United States v. Geston,
    299 F.3d 1130 (9th Cir. 2002) ................................ 19

United States v. Gomez-Gallardo,
    915 F.2d 553 (9th Cir. 1990) ................................ 20

United States v. Johnson,
    802 F.2d 1459 (D.C. Cir. 1986) .............................. 20

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) .................................. 11

United States v. May,
    622 F.2d 1000 (9th Cir. 1980) ............................... 9

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ................................. 15

United States v. Mehrmanesh,
    682 F.2d 1303 (9th Cir. 1982) ............................... 12

United States v. Miller,
    874 F.2d 1255 (9th Cir. 1989) ............................... 16

United States v. Miranda-Oregel,
    No. 2:10-CR-0007-JAM-KJN, 2014 WL 994380 (E.D. Cal. Mar. 12, 2014)
    .......................................................... 17

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ............................... 12

United States v. Mobley,
    803 F.3d 1105 (9th Cir. 2015) ............................... 6

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978) ................................ 9

United States v. Olsen,
    704 F.3d 1172 (9th Cir. 2013) ............................... 19

United States v. Ornelas,
    906 F.3d 1138 (9th Cir. 1989) ............................... 5

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ............................ 10, 11

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992) ............................... 17

United States v. Sanchez,

914 F.2d 1355 (9th Cir. 1990) .................................. 6

United States v. Seaman,
  18 F.3d 649 (9th Cir. 1994) .................................. 7

United States v. Willis,
  759 F.2d 1486 (11th Cir. 1985) .............................. 10

Zal v. Steppe,
  968 F.2d 924 (9th Cir. 1992) (Trott, J., concurring) .......... 17

**Statutes**

18 U.S.C. § 111 .......................................... _passim_

18 U.S.C. § 1361 ...................................... 1, 4, 7, 8

**Rules**

Fed. R. Crim. P. 12.1 ........................................ 12

Fed. R. Crim. P. 12.2 ........................................ 12

Fed. R. Crim. P. 12.3 ........................................ 12

Fed. R. Crim. P. 16 .......................................... 13

Fed. R. Evid. 106 ........................................ 10, 11

Fed. R. Evid. 401 .................................... 19, 16, 18

Fed. R. Evid. 402 ............................................ 19

Fed. R. Evid. 403 ........................................ 16, 19

Fed. R. Evid. 404 ............................................ 15

Fed. R. Evid. 405 ............................................ 14

Fed. R. Evid. 607 ............................................ 19

Fed. R. Evid. 608 ............................................ 19

Fed. R. Evid. 611 ............................................ 12

Fed. R. Evid. 801 ............................................ 10

Fed. R. Evid. 901 ......................................... 9, 10

**Other**

Ninth Cir. Model Jury Instructions 8.2 (2022 ed.) ............. 5, 6

Ninth Cir. Model Jury Instructions 8.3 (2022 ed.) ............... 13

McCormick on Evidence, Chapter 21, § 215 (9th ed.) ............... 9

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    FACTUAL SUMMARY

3
Defendant CARLITOS RICARDO PARIAS ("defendant") will soon stand
4
trial for: (i) assault with a deadly or dangerous weapon on United
5
States Deputy Marshal J.B., a federal officer, in violation of 18
6
U.S.C. § 111(a)(1),(b); and (ii) causing injury to or depredation of
7
government property in excess of $1,000 in violation of 18 U.S.C.
8
§ 1361.  Both charges are felonies to be decided by the jury.

9

### A.    October 2025 Offense Conduct

10
On the morning of October 21, 2025, federal law enforcement
11
agents stopped defendant in his car to arrest him on an
12
administrative arrest warrant.  The officers, including agents with
13
Homeland Security Investigations ("HSI"), an officer with U.S.
14
Immigration and Customs Enforcement ("ICE") Enforcement and Removal
15
Operations ("ERO"), and deputies with the United States Marshals
16
Service ("USMS"), were surveilling the neighborhood around the Los
17
Angeles residence where they believed defendant was living (the "20th
18
Street Residence").  One of those deputies was United States Deputy
19
Marshal "J.B."

20
At around 8:45 a.m., one of the federal agents surveilling the
21
20th Street Residence saw defendant leave the home, enter a grey
22
Toyota Camry (the "Camry"), and drive eastbound on 20th Street.  As
23
defendant drove the Camry eastbound, an ERO officer driving a DHS-
24
owned Dodge Durango (the "Durango") westbound on 20th Street
25
positioned the Durango in front of the Camry to prevent defendant
26
from driving further east.  The Durango had its emergency lights
27
activated as it approached the Camry, indicating that it was a law
28
enforcement vehicle.

Defendant seemingly recognized that the Durango was a law enforcement vehicle, because he quickly began reversing the Camry away from it.  But as the Camry reversed, two other law enforcement vehicles approached it with their emergency lights on and prevented its further travel.  First, a Ford Escape operated by an HSI agent approached from the east and parked on the north side of the Camry. Almost simultaneously, a Dodge Ram (the "Ram") operated by a Deputy Marshal also approached from the east and parked behind the Camry. Flanked by three law enforcement vehicles, as well as cars parked on the street to its south, the Camry was boxed in, leaving defendant with no means of escape.

Agents from HSI, ERO, and the USMS then approached the Camry on foot and began ordering defendant to exit the vehicle.  The agents wore vests identifying them as law enforcement officers.  Rather than turning off the car and getting out, defendant drove the Camry backwards and then forwards, first hitting the Ram behind him and then ramming the Durango in front of him.

Given defendant's continued refusal to comply with the agents' orders, one of the federal agents on scene attempted to break the driver's-side window of the Camry.  Defendant still refused to submit to arrest, and proceeded to accelerate the Camry more aggressively, forwards toward the Durango with enough force to push it backwards. By repeatedly and continuously ramming the Durango with the Camry, defendant caused damage exceeding $1,000 to the Durango.

Defendant's aggressive driving caused large plumes of smoke to form around the Camry due to the spinning of its tires.  As defendant accelerated the Camry toward the Durango, federal agents were positioned on either side of the car, including on the south side of

the Camry near where other cars were parked on 20th Street. According to those agents, including J.B., not only was the Camry accelerating aggressively forward, but the rear of the car began to fishtail, which caused the agents, including J.B., to fear that defendant may hit them with the car.

In addition, defendant's aggressive acceleration of the Camry caused debris (rubber being shed from the tires) to fly into the air, which struck some of the agents, including J.B. During the tense incident, an agent on scene discharged his firearm, shooting defendant in the arm.

### B.    June 2025 Prior Flight from Law Enforcement

This was not defendant's first interaction with federal law enforcement, nor his first refusal to get out of a car when ordered to by law enforcement. Earlier this year, in June 2025, ICE and USMS deputies were transporting a gang member in South Los Angeles when a black pickup truck began closely following their vehicles. The agents pulled over the pickup truck and, upon inspection, discovered defendant hiding in the backseat wearing a black vest and holding a black blunt object (later revealed to be a walkie talkie radio) in his hand, which he attempted to conceal. After refusing commands to show his hands and exit the vehicle, defendant was removed from the pickup truck, handcuffed, and placed on the street curb. Defendant complained that he needed medical attention, leading agents to call paramedics to their location. While defendant was detained, a crowd of approximately at least 20 people began gathering around the scene and shouting obscenities at the agents. Shortly thereafter, a grey sedan approached the scene, and an unidentified man got out of the car and approached defendant. The man took the still-handcuffed

1  defendant from the curb and put him in the grey sedan without the
2  agents' permission before driving away.  Facing safety concerns due
3  to the large and aggressive crowd, the agents elected to leave the
4  scene without pursuing the grey sedan.

5  **II.  Trial and Stipulations**

6      Trial is set to commence on December 30, 2025, at 8:45 a.m.
7  before this Court.

8      There are currently no stipulations between the parties as to
9  factual, evidentiary, or legal issues in this case.  However, the
10 government intends to ask defense counsel to stipulate to the
11 following:

12     • That the victim, J.B., was a federal officer engaged in his
13       official duties at the time of the October 2025 incident;

14     • That the Dodge Durango described above is property of the
15       United States.

16     • The cost of the damage to the Durango, which exceeded
17       $1,000.

18 **III. THE CHARGED OFFENSES**

19     Defendant is charged with:

20     • <u>COUNT ONE</u>: Assault on a federal officer using a deadly or
21       dangerous weapon in violation of 18 U.S.C. § 111(a)(1),
22       (b); and

23     • <u>COUNT TWO</u>: Depredation of government property in excess of
24       $1,000 in violation of 18 U.S.C. § 1361.

25

26

27

28

4

**A.   Count One – Assault on Federal Office With a Deadly Weapon (18 U.S.C. § 111(a)(1), (b))**

   1.   <u>Elements</u>

To prevail on its charge that defendant assaulted a federal officer with a deadly weapon, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant forcibly assaulted United States Deputy Marshall J.B.;

Second, defendant assaulted United States Deputy Marshal J.B. while J.B. was engaged in, or on account of, his official duties; and

Third, defendant used a deadly or dangerous weapon.  Ninth Cir. Model Jury Instructions 8.2 (2022 ed.).

   *a.   "Forcible Assault" Explained*

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.  Ninth Cir. Model Jury Instructions 8.2 (2022 ed.).

   *b.   "Official Duties" Explained*

A person is engaging in the performance of official duties if he is acting within the scope of his employment, that is, the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own. Ninth Cir. Model Jury Instructions 8.2 (2022 ed.) (citing <u>United States v. Ornelas</u>, 906 F.3d 1138, 1149 (9th Cir. 1989)).

The victim in this case was J.B., a Deputy United States Marshal who was executing an administrative arrest warrant against defendant issued in conjunction with a federal immigration proceeding.

### c.    *"Deadly or Dangerous Weapon" Explained*

An object is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.  See Ninth Cir. Model Jury Instructions 8.2 (2022 ed.).  An automobile can constitute a deadly or dangerous weapon for purposes of 18 U.S.C. § 111(b).  See United States v. Anchrum, 590 F.3d 795, 801 (9th Cir. 2009) ("That a car, truck, automobile, or vehicle can constitute a dangerous or deadly weapon under 18 U.S.C. § 111(b) is not a new holding.").

### 2.    Mens Rea for Section 111 Offense

Section 111 is a general intent crime in the Ninth Circuit, and no intent to injure is required to prove this offense.  United States v. Sanchez, 914 F.2d 1355, 1358, 1359-60 (9th Cir. 1990).

Furthermore, there is no requirement that an assailant be aware that the victim is a federal officer.  Ninth Cir. Model Jury Instructions 8.2 (2022 ed.) (citing United States v. Feola, 420 U.S. 671, 684 (1985) and United States v. Mobley, 803 F.3d 1105, 1109 (9th Cir. 2015)).

### 3.    Penalties

A defendant who commits only simple assault under 18 U.S.C. § 111(a) — that is where the defendant neither uses a deadly or dangerous weapon nor inflicts bodily injury — shall be fined or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the

intent to commit another felony, be fined or imprisoned not more than 8 years, or both.  See 18 U.S.C. § 111(a).

By contrast, a defendant who uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of defective component) in the commission of an assault against a federal officer shall be fined or imprisoned not more than 20 years, or both.  18 U.S.C. § 111(b).

**B.    Count Two – Depredation of Federal Property In Excess of $1,000 (18 U.S.C. § 1361)**

1.    Elements

To prevail on its charge that defendant willfully injured or committed a depredation against property of the United States exceeding $1,000, the government must prove each of the following elements beyond a reasonable doubt:

First, defendant injured or committed a depredation against property;

Second, the property involved was property of the United States or of any department or agency thereof, or property that had been or was being manufactured or constructed for the United States, or for any department or agency thereof;

Third, defendant acted willfully; and

Fourth, the damage to the property exceeded the sum of $1,000. See 18 U.S.C. § 1361; United States v. Seaman, 18 F.3d 649, 650 (9th Cir. 1994).

2.    Mens Rea for Section 1361 Offense

As the Supreme Court has explained, while "willfully" in a statute is sometimes controlled by the context in which it appears, as a general matter in the criminal context it requires the

7

government to "prove that the defendant acted with knowledge that his conduct was unlawful." United States v. Derington, 229 F.3d 1243, 1248 (9th Cir. 2000) (quoting Bryan v. United States, 524 U.S. 184, 192 (1998)) (cleaned up) (reviewing jury instructions for charge under 18 U.S.C. § 1361).

### 3.   Penalties

A defendant who causes damage or attempted damage exceeding the sum of $1,000 to government property, or any other property described in 18 U.S.C. § 1361, shall be punished by a fine or imprisonment for not more than ten years, or both. See 18 U.S.C. § 1361.

If the damage or attempted damage to such property does not exceed the sum of $1,000, a defendant shall be punished by a fine or imprisonment for not more than one year, or both. See id.

## IV.  LENGTH OF TRIAL AND NUMBER OF WITNESSES

### A.   Length of Government's Case-In-Chief

The government estimates that presentation of its case-in-chief will take approximately one to two days, which includes defense's anticipated cross-examination.

### B.   Anticipated Government Witnesses

The government currently anticipates calling the following four witnesses in its case-in-chief:

- HSI Special Agent Norman Early
- US Deputy Marshal J.B. (victim)
- Deportation Officer Thomas Felix
- Charlie Cha, SK Auto Body

The government respectfully reserves the right to supplement its witness list leading up to trial, as well as to call additional witnesses in either its case-in-chief or rebuttal case (if any).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Anticipated Government Exhibits

The government will seek to admit approximately 20 exhibits, which will include security and body-worn video footage, as well as photographs, from the October 21, 2025 incident; records relating to the Dodge Durango, including title records and a property damage estimate for damage to the Durango; and social media videos from defendant's June 2025 flight from law enforcement.

## V.    LEGAL AND EVIDENTIARY ISSUES

### A.    Photographs and Video Surveillance

The government intends to introduce at trial photographs and video footage, including bodycam, dashcam, security camera, and social media footage, of defendant's October 21, 2025 arrest and his June 2025 flight from law enforcement.  Admitting a photograph or video into evidence requires that the proponent meet only a very low hurdle.  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (interpreting Fed. R. Evid. 901(b)(1)).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Photographs and videos should be admitted so long as they fairly and accurately represent the event or object in question.  See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture."  32 McCormick on Evid. § 215 (7th ed.).  Rule 901(a) simply requires that

9

1  a proponent of evidence make a prima facie showing of authenticity so

2  that a reasonable juror could find "that the item is what the

3  proponent claims it is."  Fed. R. Evid. 901(a).

4      **B.   Defendant's Statements**

5      Under the Federal Rules of Evidence, a defendant's statement is

6  admissible only if offered <u>against</u> him; a defendant may not elicit

7  his own prior statements. <u>See</u> Fed. R. Evid. 801(d)(2)(A); <u>United</u>

8  <u>States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam).

9  To permit otherwise would place a defendant's statements "before the

10  jury without subjecting [himself] to cross-examination, precisely

11  what the hearsay rule forbids." <u>United States v. Ortega</u>, 203 F.3d

12  675, 682 (9th Cir. 2000) (holding that the district court properly

13  barred defendant from seeking to introduce his exculpatory post-

14  arrest statements through cross-examination of government agent)

15  (alteration in original); <u>United States v. Cunningham</u>, 194 F.3d 1186,

16  1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an

17  exculpatory statement made at the time of his arrest without

18  subjecting himself to cross examination.").

19      When the government admits some of a defendant's prior

20  statements, the door is not thereby opened to the defendant to put in

21  all of her out-of-court statements.  This is because, when offered by

22  defendant, the statements are still inadmissible hearsay. <u>See</u> Fed. R.

23  Evid. 801(d)(2); <u>see also</u> <u>United States v. Burreson</u>, 643 F.2d 1344,

24  1349 (9th Cir. 1981); <u>United States v. Willis</u>, 759 F.2d 1486, 1501

25  (11th Cir. 1985) (defendant's exculpatory statement inadmissible when

26  offered by defense).

27      Similarly, a defendant's exculpatory statements are not

28  admissible under Federal Rule of Evidence 106, the "rule of

completeness."  Evidence that is inadmissible is not made admissible
by invocation of the "rule of completeness." See United States v.
Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible
notwithstanding Rule 106).  As the Ninth Circuit noted in Ortega, a
defendant's non-self-inculpatory statements are inadmissible hearsay
even if they were made contemporaneously with other self-inculpatory
statements. Ortega, 203 F.3d at 682 (citing Williamson v. United
States, 512 U.S. 594, 599 (1994)).  The "rule of completeness" may
require that all of a defendant's prior statements be admitted only
where it is necessary to explain an admitted statement, to place it
in context, or to avoid misleading the trier of fact. See, e.g.,
United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  The doctrine
does not, however, require introduction of portions of a statement
that are neither explanatory of, nor relevant to, the admitted
passages.  See Ortega, 203 F.3d at 682-683; Marin, 669 F.2d at 84.
The burden is on the defendant to identify a basis for admitting
additional portions of the defendant's prior statement.  United
States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996).

> **C.    Scope of Cross-Examination of Defendant**

If defendant testifies at trial, he waives his right against
self-incrimination, and the government will cross-examine him on all
matters reasonably related to the subject matter of his testimony.
See, e.g., McGautha v. California, 402 U.S. 183, 215 (1971) ("The
defendant cannot assert a self-incrimination privilege 'on matters
reasonably related to the subject matter of his cross-examination.'")
vacated in part on other grounds, 408 U.S. 941 (1972); United States
v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant
actually discusses on direct does not determine the extent of

permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).

The scope of cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  Defendant has no right to avoid cross-examination on matters that call into question his claim of innocence.  United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The government may introduce evidence should defendant "open the door."  See United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995), as amended on denial of reh'g (Apr. 11, 1995) ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue.").

### D.  Affirmative Defenses and Reciprocal Discovery

Defendant has not given notice of his intent to rely on any defense of entrapment, mental incapacity, alibi, or any other affirmative defense that requires notice pursuant to the Federal Rules of Criminal Procedure, despite the government's written requests for such notice of intent.  See, e.g., Fed. R. Crim. P. 12.1-12.3.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude defendant from asserting such a defense.

The government anticipates from pretrial filings that defendant may seek to mount a self-defense argument.  It is a defense to the charge of assault on a federal officer with a deadly weapon if (1) defendant did not know that J.B. was a federal officer, (2) defendant reasonably believed that use of force was necessary to defend himself

12

against an immediate use of unlawful force, and (3) defendant used no more force than appeared reasonably necessary in the circumstances. See Ninth Cir. Model Jury Instructions 8.3 (2022 ed.).

If defendant makes a prima facie showing of all three elements and is permitted to make a self-defense argument, the government must additionally prove at trial at least one of the following: (1) defendant knew that J.B. was a federal officer, (2) defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force, or (3) defendant used more force than appeared reasonably necessary in the circumstances. See id.

To date, defendant has produced no reciprocal discovery despite written requests by the government that he do so. Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on defendants a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c). In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit that party from introducing the undisclosed evidence," or it may "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) and (D). To the extent defendant may attempt to introduce or use any evidence at trial that he has not produced to the government, such documents should be excluded. See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to

13

1   comply with, or object to, government's discovery request before

2   trial justified exclusion of unproduced evidence).

3        If defendant serves discovery on the government mid-trial, the

4   government further seeks leave from the Court to have adequate time

5   to review the provided discovery, run necessary criminal background

6   checks, and request offers of proof from the defense as to any

7   previously undisclosed witnesses.

8        **E.    Character Evidence**

9        The Supreme Court has recognized that character evidence —

10  particularly cumulative character evidence — has weak probative value

11  and great potential to confuse the issues and prejudice the jury.

12  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The

13  Court has thus given trial courts wide discretion to limit the

14  presentation of character evidence.  Id.

15       In addition, the form of the proffered evidence must be proper.

16  Federal Rule of Evidence 405(a) sets forth the sole methods for which

17  character evidence may be introduced.  It specifically states that,

18  where evidence of a character trait is admissible, proof may be made

19  in two ways: (1) by testimony as to reputation and (2) by testimony

20  as to opinion.  Thus, a defendant may not introduce specific

21  instances of his or her good conduct through the testimony of others.

22  See Michelson, 335 U.S. at 477.  On cross-examination of a

23  defendant's character witness, however, the government may inquire

24  into specific instances of a defendant's past conduct relevant to the

25  character trait at issue.  See Fed. R. Evid. 405(a).  In particular,

26  a defendant's character witnesses may be cross-examined about their

27  knowledge of the defendant's past crimes, wrongful acts, and arrests.

28  See Michelson, 335 U.S. at 481.  The only prerequisite is that there

14

1  must be a good faith basis that the incidents inquired about are

2  relevant to the character trait at issue. See United States v.

3  McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

4      Accordingly, to the extent defendant attempts to introduce

5  evidence of his character or reputation at trial, the government

6  should be allowed to inquire on cross-examination into specific

7  instances of defendant's past misconduct, including his June 2025

8  flight from law enforcement.

9      **F.  Defendant's Prior Acts**

10     Relatedly, the government intends to introduce testimonial and

11 video evidence regarding defendant's June 2025 flight from law

12 enforcement for any purpose permitted by Rule 404(b) of the Federal

13 Rules of Evidence, including to show intent, knowledge, identity,

14 absence of mistake, or lack of accident as relates to defendant's

15 conduct during his October 21, 2025 arrest.  See Fed. R. Evid.

16 404(b).  The government previously gave defendant written notice that

17 it intends to introduce evidence of June's events in its production

18 letter of November 26, 2025.  To date, defendant has not notified the

19 government of any perceived insufficiencies in the Rule 404(b) notice

20 or of defendant's intent to move to exclude such evidence.

21     The Ninth Circuit has established a four-part test for the

22 Court's consideration in determining whether to admit evidence under

23 Rule 404(b):

24     (1) the evidence tends to prove a material point;

25     (2) the other act evidence is not too remote in time;

26     (3) the evidence is sufficient to support a finding that

27 defendant committed the other act; and

28     (4) the other act is similar to the offense charged.

1  United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008).  After

2  analyzing the evidence through this rubric, the Court is then to

3  examine the evidence to determine if its probative value is

4  substantially outweighed by the danger of unfair prejudice.  See Fed.

5  R. Evid. 403; see also United States v. Miller, 874 F.2d 1255, 1268

6  (9th Cir. 1989).

7       Here, evidence of defendant's June 2025 flight from law

8  enforcement is admissible to prove intent, knowledge, identity,

9  absence of mistake, and lack of accident as relates to his conduct

10 during his October 21, 2025 arrest.  In pretrial filings, defendant

11 has alleged that he believed he was being kidnapped by civilians, as

12 opposed to law enforcement officers.  Evidence relating to his June

13 2025 flight from law enforcement is relevant because it is probative,

14 inter alia, of defendant's knowledge that he was sought by law

15 enforcement (having fled the scene of an investigation in handcuffs

16 just months earlier) and that the men who approached his vehicle and

17 sought to arrest him on October 21, 2025, were law enforcement

18 officers.  See Fed. R. Evid. 401.  It therefore rebuts defendant's

19 anticipated arguments as to what the government anticipates will be a

20 central issue at trial -- whether defendant was acting in self-

21 defense -- and is probative of his intent to assault victim J.B. and

22 damage the government vehicle.

23      **G.   Discovery Produced After Discovery Deadline**

24      The discovery cutoff in this case was December 5, 2025.  In

25 compliance with its statutory and constitutional obligations, the

26 government has continued making discovery productions to defendant

27 after that date.  The government will not seek to admit any material

28 produced after the discovery cutoff as evidence in its case-in-chief.

1

### H.    Jury Nullification

2    The government also reserves the right to object to any evidence

3    and/or argument relating to any possible jury nullification defense,

4    including concerning punishment, the actions of law enforcement both

5    after defendant's arrest and at other arrests or protest events, or

6    national immigration policy and its effect on the community and/or

7    individuals.  A defendant has no right to present evidence relevant

8    only to such a defense.  United States v. Powell, 955 F.2d 1206, 1213

9    (9th Cir. 1992); Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992)

10   (Trott, J., concurring) ("[N]either a defendant nor his attorney has

11   a right to present to a jury evidence that is irrelevant to a legal

12   defense to, or an element of, the crime charged.").

13   In other criminal cases in this Circuit -- even cases charging

14   immigration crimes -- district courts have excluded arguments and

15   accompanying inadmissible evidence aimed at jury nullification.  See,

16   e.g., United States v. Castro-Cabrera, 534 F. Supp. 2d 1156, 1162

17   (C.D. Cal. 2008) (excluding argument and evidence aimed at seeking

18   jury nullification); United States v. Miranda-Oregel, No. 2:10-CR-

19   0007-JAM-KJN, 2014 WL 994380, at *3 (E.D. Cal. Mar. 12, 2014) (noting

20   decision "to preclude all arguments and evidence relating to a jury

21   nullification defense"), report and recommendation adopted, No. 2:10-

22   CR-0007 JAM KJN, 2015 WL 871949 (E.D. Cal. Feb. 27, 2015).  Likewise,

23   this Court should preclude defendant from attacking the validity of

24   his arrest on policy grounds or challenging immigration laws and

25   policy of the United States with the jury through argument or

26   evidence.  Arguments of this nature would be designed to evoke an

27   emotional response in jurors or to distract and confuse jurors to

28

focus on highly charged social issues instead of the elements of the charged crimes.

Similarly, to the extent defendant seeks to admit at trial evidence regarding the discharge of an agent's weapon and defendant's injuries during the October 21, 2025 incident, the evidence is irrelevant and unfairly prejudicial, and risks confusing the issues and misleading the jury. As the evidence will show, defendant's conduct constituting the charged crimes occurred before the firearm was discharged, and the fact defendant was shot thereafter has no bearing on whether defendant assaulted officers with his car and damaged government property. See Fed. R. Evid. 401. For the same reason, whether the officer who discharged the firearm acted within standard operating procedure has no bearing on whether defendant smoked his tires, caused his car to fishtail, and rammed into the government-owned Dodge Durango. Admission of evidence and testimony as to the shooting and defendant's injuries would serve only to inflame juror's emotions, cause the jury to decide the case on an improper basis, and create a mini-trial as to the nature of the shooting, which is irrelevant to the charged crimes.

## VI. PRETRIAL MOTIONS AND ISSUES TO RESOLVE BEFORE TRIAL

### A. Government Motions

The government has no pending motions before this Court.

### B. Defense Motions

Defendant's only pending motion before this Court is his Ex Parte Application for Order Dismissing Case with Prejudice, which has been fully briefed. See Dkts. 54, 61, 63.

1    **C.    Issues to Resolve Before Trial**

2        **1.    Impeachment Information**

3        The government has disclosed pursuant to a protective order

4    confidential personnel information relating to certain anticipated

5    government witnesses, as well as additional law enforcement witnesses

6    whom it does not currently intend to call at trial.  The government

7    believes that such information is inadmissible because it (1) does

8    not bear on the witnesses' character for truthfulness or credibility,

9    United States v. Geston, 299 F.3d 1130, 1137 (9th Cir. 2002), and/or

10   (2) is substantially outweighed by one or more of the dangers

11   outlined in Rule 403, namely, unfair prejudice, confusing the issues,

12   misleading the jury, undue delay, wasting time, or needlessly

13   presenting cumulative evidence.  See Fed. R. Evid. 401, 402, 403;

14   United States v. Olsen, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013)

15   (evidence admissible under Rule 608(b) is "subject . . . to the

16   balancing analysis of Rule 403").

17       The government intends to confer with defense counsel to obtain

18   defendant's position on the admissibility of such evidence for

19   purposes of impeachment.

20       To the extent defendant seeks to call at trial a law enforcement

21   witness whose testimony would be merely cumulative and/or

22   inadmissible under Rule 403, it would appear defendant would be

23   calling such witness for the sole purpose of impeaching them.

24   Federal Rule of Evidence 607 provides that "[a]ny party, including

25   the party that called the witness, may attack the witness's

26   credibility."  Yet a party may not call a witness in its case-in-

27   chief as a pretext for impeaching that witness' credibility and thus

28   present to the jury evidence that would be inadmissible but for the

impeachment.  See United States v. Johnson, 802 F.2d 1459, 1466 (D.C. Cir. 1986) ("Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be used as a mere subterfuge to get before the jury evidence not otherwise admissible." (internal quotations omitted)); see also United States v. Gomez-Gallardo, 915 F.2d 553, 555 (9th Cir. 1990) (holding that the government improperly called a witness "for the primary purpose of impeaching him").

### 2.    Stipulations to Admissibility of Exhibits

The government intends to confer with defendant on whether he will stipulate to the admissibility of certain of the government's trial exhibits.  The parties will file a Pretrial Exhibit Stipulation as required by this Court's Case Management Order.  See Dkt. 42.

## VII.  CONCLUSION

The United States respectfully requests leave to supplement this trial memorandum as necessary.